THE BALTIMORE & OHIO RD. CO., APPELLANT, *v.*
CARMAN ET AL., APPELLEES.

(No. 768—Decided June 8, 1942.)

*Messrs. Thornburg & Lewis,* for appellant.
*Mr. D. F. L. McKisson,* for appellees.

By THE COURT. Plaintiff, The Baltimore & Ohio Railroad Company, a corporation, appeals on questions of law and fact from a judgment of the Court of Common Pleas of Belmont county, entered in an action to quiet title to lands situated in such county, and seeks to enjoin defendant Carman from the use thereof, or interference therewith.

The cause was submitted to us upon the record made in the court below and additional evidence offered on the trial *de novo* herein from which we learn that on April 28, 1898, William Kinney, as assignee of lot one and owner in fee of lots numbers three, four and five, granted those lots, situated in Hart's Addition to the town of Belmont, Ohio, near plaintiff's main line and station, to plaintiff's predecessor and assignor, Central Ohio Railroad Company, by a duly executed, witnessed and acknowledged ninety-nine year lease, renewable forever, at the option of lessee, upon condition that the demised premises be used for railroad and station purposes; that such lease was presented to the recorder of Belmont county for record on September 8, 1906, and thereafter recorded on September 28, 1906, but was not presented to the auditor of that county for transfer upon the tax records thereof, and accordingly remained upon the tax duplicate of that county in the name of William Kinney and William Kinney assignee until subsequently transferred to defendant Carman's name as hereinafter set forth; that thereupon plaintiff's predecessor took possession of the demised premises, and shortly thereafter constructed a siding parallel to its main track and switch leading therefrom on lots one, three and a part of lot four, which has been since used almost continuously for railroad storage, loading and unloading purposes; that a part of lot five situated west of the west end of such

switch has also been used for like purposes; that defendant Carman purchased the premises at a delinquent tax land sale in January 1910, and on January eighteenth of that year a certificate of purchase thereof was issued to him by the auditor of Belmont county, who immediately thereafter entered the lots in Carman's name on the tax duplicate thereof; that such certificate was retained by the defendant Carman until May 16, 1938, when he presented it to the auditor of Belmont county, who executed and delivered a deed therefor to him on March 13, 1941, which was subsequently duly recorded, and upon such lands after purchase he paid taxes assessed thereon; that upon purchase defendant Carman took possession of a part of lot five and those parts of lots one, three and four not occupied by plaintiff, cut weeds and underbrush upon, dammed a ravine across, filled, leveled, sewered, otherwise improved and gardened such parts, which as far as the record discloses did not interfere with plaintiff's use thereof for railroad purposes; and that thereafter he proceeded and threatened to charge shippers over plaintiff's railroad for the privilege of loading and unloading on the spur track.

There is no evidence of probative value before us of exclusive possession of any one or any part of any of the lots by either of the parties from 1910 to the present, except plaintiff's above mentioned use of the switch, siding, or spur track. Hence none of the elements thereof being present adverse possession of the lots in dispute has not been established in either party.

Obviously plaintiff's claimed right to the disputed lots must be established by its lease and defendant Carman's claim thereto by the delinquent tax land sale to both of which reference has been made and upon which each of the parties, respectively, relies.

A ninety-nine year lease renewable forever is a freehold estate.

Since defendant Carman purchased the lots in question at a delinquent tax land sale, received a certificate of purchase thereof, had the lands transferred in his name, paid taxes thereon as assessed upon the tax duplicate of Belmont county, the validity of his subsequent deed depends upon the question whether plaintiff company was delinquent in the payment of its taxes legally assessed thereon. If it paid such taxes in accordance with law then the delinquent tax land sale to defendant and all proceedings thereunder were void. See Section 2886, Revised Statutes, 56 Ohio Laws, 137, Section 42, 1 Swan & Critchfield, 106 (now Section 5721, General Code).

Reviewing the record submitted to us, we reach the conclusion that plaintiff company paid the taxes upon the leased lots as personal property, on the basis of the assessed value of its track mileage, in accordance with the provisions of Section 2772, Revised Statutes, then in effect (now Section 5419, General Code), and the receipts for such payments, together with annual reports showing a schedule of structures and improvements thereon, are in evidence.

Under provisions of the latter section the then assessing authority being authorized to require plaintiff company to furnish any and all information necessary to determine the value of its personal property, including road bed and real estate used for railroad purposes, it must be presumed in the absence of evidence to the contrary that the fact that such lots were included in the appraised value of such personal property was before such assessing authority.

Since there were no delinquent taxes on the disputed lots there could be no legal delinquent land tax sale thereof, and accordingly defendant Carman acquired no right, title or interest in or to any part thereof at such sale. If taxes charged upon the lots

in question were erroneously returned as delinquent and they were sold to defendant at such void delinquent tax land sale the then effective applicable statutes provided that the purchase price thereof "shall be refunded" to purchaser from the county treasury upon order of the county auditor. See Section 2886, Revised Statutes.

Defendant Carman paid four dollars and twenty-three cents at the time he received the certificates of purchase of the lots in question, and in addition paid taxes thereon regularly for a period in excess of thirty years.

However, viewing this case as we do, we deem it unnecessary to pass upon the question whether defendant Carman can now recover from Belmont county any part or all of such amount.

The controversy presented here arises as a result of the combined error and failure of the recorder of Belmont county to record the ninety-nine year lease to plaintiff company until it was transferred on the tax records of that county, of plaintiff company to have the leased lands properly transferred for taxation in its name, and of defendant Carman to secure a deed for nearly thirty years.

Plaintiff company through mistake, omission, failure or for other reasons failed to see that the taxes on the leased lands were duly assessed against it as lessee and that its lessor Kinney was discharged from payment of further taxes thereon.

Plaintiff made no request for such transfer and the auditor can not be expected to be familiar with such a transfer, even though the recording of the lease to plaintiff company was constructive notice to defendant Carman and the world that taxes assessed against the leased premises were properly assessable against it.

While defendant Carman did not act expeditiously in securing and recording a deed to himself, yet his fail-

ure in that respect in our opinion contributed less to causing the delinquent tax land sale than that of the plaintiff company in failing to have the leased lands transferred in its name and upon consideration of all the facts presented here we believe he must be granted some relief. See 19 American Jurisprudence, 331, Section 478, wherein it is stated:

"If the parties appear not to have been *in pari delicto*, the one whose wrong is less than that of the other may be granted relief in some circumstances."

Accordingly we are of opinion that as a result of the failure of plaintiff company to have the leased lands transferred upon the tax duplicate in its name defendant Carman in good faith paid taxes on the purchased land under the mistaken belief that he had title to the four parcels, for which amount with interest in equity and good conscience he should be reimbursed by plaintiff, as "equity will not suffer a wrong to be without a remedy."

We are not impressed with the contention that since defendant Carman held title to lot one as assignee a different question is presented with reference thereto, for the reason that a new title is created by a delinquent tax land sale, and the purchaser "at such a sale reaps no benefit from the weakness of the other party's title."

Therefore, without further discussion, the conclusion is reached that the deed of the auditor of Belmont county to defendant Carman and his claim against the disputed lands must be declared null and void and the deed to him cancelled of record; that the temporary restraining order must be made permanent as prayed for, and it is so ordered, conditioned however upon the plaintiff company forthwith paying to defendant Carman the amount he paid for the disputed lands at the delinquent tax land sale, together with all

taxes thereafter paid by him thereon, and interest at the rate of six per cent per annum on such amounts; and that under the equitable power reposed in this court plaintiff company is hereby ordered subrogated to any and all rights, which rights we do not determine, that defendant Carman has or might have against Belmont county for any and all payments of money made to it on account of such delinquent tax land sale and taxes paid on such lands.

A decree may be drawn in accordance with this finding.

*Decree accordingly.*

CARTER, P. J., PHILLIPS and NICHOLS, JJ., concur.